In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1213

JOHN GNUTEK,

*Plaintiff-Appellant,*

*v.*

ILLINOIS GAMING BOARD, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-00808 — **Martha M. Pacold**, *Judge.*

ARGUED DECEMBER 8, 2022 — DECIDED SEPTEMBER 7, 2023

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* John Gnutek filed a complaint alleging that he was unlawfully terminated from his position as a Gaming Senior Special Agent with the Illinois Gaming Board (the "Board"). His complaint alleged that his termination violated Title VII, the First Amendment under 42 U.S.C. § 1983, and the Illinois Ethics Act. The district court dismissed the Illinois Ethics Act claims against the Board and individual defendants in their official capacities. Following discovery,

Gnutek voluntarily dismissed the claims against individual defendants Clinton Cobb and Isaiah Vega. Gnutek does not appeal any of those dismissals. The district court then granted summary judgment in favor of the Board and individual defendants Mark Ostrowski, Karen Weathers, and Vincent Pattara on the remaining claims, and Gnutek appeals that grant of summary judgment.

The Board is an Illinois state agency tasked with the enforcement of certain gaming laws in the state, including the regulation of riverboat casino gambling and video gaming. Gnutek began his employment as a Revenue Special Agent Trainee in 1999 and progressed through a number of positions to Gaming Senior Special Agent. As part of the duties of that position, Gnutek "was an armed peace officer and had daily interactions with members of the public while performing his investigations and law enforcement duties." Dist. Ct. Memorandum Op. and Order at 2 (internal quotation marks omitted).

On May 31, 2014, Gnutek was involved in an altercation with the driver of a pickup truck and trailer, as a result of which Gnutek was arrested and charged with battery. According to the police report, Gnutek was a passenger in his car which was driven by his teenage son, and as the car passed a truck, the driver of the truck threw a beer bottle at Gnutek's car, breaking his taillight. Both vehicles stopped in the road, and Gnutek exited and approached the driver's side of the truck. Gnutek claimed that the seated truck driver punched him through the open window and bit his hand, and that he did not strike the driver. The driver denied throwing anything at Gnutek's vehicle and claimed that Gnutek came to his window and began punching him. The driver of the truck

sustained injuries to his face and chest which were visible to the reporting officer and caused the officer to call for an ambulance. The officer also photographed injuries on Gnutek's hand which appeared consistent with punching someone or something, and light damage to Gnutek's car.

Gnutek reported the arrest to his direct supervisor at the Board, who in turn notified other supervisors up the chain of command. He was subsequently placed on administrative leave beginning on June 2, 2014. After a bench trial on November 6, 2014, Gnutek was found guilty of battery, a Class A misdemeanor. In so finding, the judge found Gnutek's testimony as to his own actions incredible. Following that guilty finding and an off-the-record conversation, the judge decided to continue the case for a period of 90 days, at which point the judge would consider a motion to vacate the guilty finding if Gnutek successfully completed anger management counseling and paid the medical expenses of the truck driver.

Following the trial, Gnutek informed the Board, by emailing Weathers, Pattara, and Ostrowski, that the judge found him guilty of battery and had made a deferred adjudication, ordering counseling and the payment of $2000 to the truck driver, and that the case was continued until March 11, 2015, and would be dismissed without entering a finding of guilt if those conditions were met. The Board, on January 9, 2015, issued a memorandum to Gnutek informing him that discipline was contemplated based on the charge that he was arrested for battery due to a physical altercation with another individual and found guilty, and that his conduct toward the individual and the battery conviction violated the Illinois Gaming Board Employee Handbook Chapter 4: Rules of Conduct, Conduct Unbecoming an Employee, and Convictions. The

memorandum attached the Rules of Conduct, Chapter 4 of the Handbook. A subsection entitled "Convictions" discussed the requirement to notify the employer of convictions incurred during employment, and provided that "[f]or purposes of this section, 'convictions' include all misdemeanors and felonies committed as an adult for which you plead guilty, are found guilty, are convicted, or agreed to an alternative sentencing program or pretrial diversion program which required an admission, stipulation or finding of guilt, including court supervision and/or probation." Dist. Ct. Order at 11. A subsection entitled "Conduct unbecoming an employee" provided that "[a]ll contact with fellow employees and the public must be conducted in a manner that will not discredit the background, character, or integrity of any individual and will not cause discord with the public or fellow employees, disrupt official business, or endanger public safety."

A pre-disciplinary meeting was held on January 14, 2015, and on January 28, 2015, Gnutek submitted a written rebuttal. In that rebuttal, he maintained that the altercation occurred exactly as outlined in his trial testimony, and that he did not batter the truck driver and merely defended himself. He further asserted that he had not been convicted because the case was continued for a final ruling.

Pursuant to state procedures, the agency then recommended Gnutek's discharge, and the Director of Central Management Services approved the charges and terminated his employment effective February 27, 2015. On April 29, 2015, the Illinois state court entered an order finding Gnutek not guilty of the battery charge.

Gnutek filed suit in the district court alleging that the termination was unlawful under Title VII, the First Amendment,

and the Illinois Ethics Act in that it was made in retaliation for his history of litigation against the Board opposing unlawful actions. The district court granted summary judgment in favor of the defendants. We review the grant of summary judgment *de novo*, taking all reasonable inferences in favor of Gnutek. *Bless v. Cook Cty. Sheriff's Office*, 9 F.4th 565, 571 (7th Cir. 2021).

A retaliation claim under Title VII requires enough evidence to permit a reasonable jury to find that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and that adverse employment action. *Rozumalski v. W.F. Baird & Assoc., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). Only the causal connection is at issue here. To demonstrate such a connection, a plaintiff can present direct evidence, but may also choose to rely on circumstantial evidence, which may include "'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.'" *Id.*, quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). Regardless of the type of evidence presented, "[t]he key question is whether a reasonable juror could conclude that there was a causal link between the protected activity or status and the adverse action." *Id.*; *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). A retaliation claim under Title VII requires a plaintiff to establish "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013).

If a plaintiff establishes a prima facie case of retaliation, an employer may produce evidence that it had a legitimate non-discriminatory reason for the adverse employment action. *Robertson v. Dept. of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020). If that burden is met, in order to avoid summary judgment, the plaintiff "must produce evidence that would permit a trier of fact to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Id*. "In determining whether the employer's reason can be characterized as pretextual, we do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Id*.

Gnutek's claim under § 1983, alleging a violation of the First Amendment, similarly requires him to show that the protected speech was a but-for cause of the employer's action. *Milliman v. County of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). The state law claim for public employees under the Ethics Act, however, asks only whether a reasonable jury could find that the protected activity was a "contributing factor" in the adverse employment action. 5 ILCS 430/15-20 (West 2014); *Wynn v. Illinois Dept. of Human Services*, 81 N.E.3d 28, 39 (Ill. App. Ct. 1st Dist. 2017). The employer can counter that showing by demonstrating by clear and convincing evidence that the defendants "would have taken the same unfavorable personnel action in the absence of that conduct." *Id*. at 42.

Gnutek points to his lengthy litigation history against the Board and entities associated with it, including a 2006 lawsuit under Title VII alleging gender discrimination and retaliation,

a 2006 RICO lawsuit alleging improper influences in hiring decisions at the Board, and a lawsuit alleging that a prior termination violated Title VII and the First Amendment. Gnutek asserted in his complaint that he was terminated by the defendants in retaliation for exercising his First Amendment rights in pursuing the prior litigation. Other than pointing out that he had previously engaged in the protected conduct of litigation, however, Gnutek provides no link between the termination decision and his protected conduct. And in his reply brief, Gnutek specifically disavows reliance on the timing as evidence of retaliation, stating that he "has never argued that there was suspicious timing." Instead, Gnutek argues that summary judgment was improper because a jury could properly conclude that the justification for his termination was not truthful.

The Board argued that its termination decision was based on his off duty conduct of May 31, 2014, which violated the dual grounds of a criminal conviction and of conduct unbecoming an employee. Gnutek argued that the question is not whether the battery incident provided cause for his termination, but whether that was the actual reason for his termination. He provides insufficient evidence, however, to allow a jury to conclude that his termination was based on another reason – and no evidence at all that the other reason was retaliation.

As stated, he points to the history of his litigation against the Gaming Board but disavows any argument that suspicious timing is a sufficient basis to show the termination was retaliatory. He instead argues that there was sufficient evidence for a jury to conclude that Gnutek's termination was retaliatory because the defendants falsely pursued a narrative

that Gnutek had been convicted of a crime, when they knew the finding of guilt would be vacated. Gnutek argues that he had made it clear to the Board that he was not ultimately going to be convicted of a crime and that despite that knowledge of the procedural posture of the case, the Board led CMS to the conclusion that there had been a conviction.

As the district court properly found, the email to CMS did not mischaracterize the status of the case. First, the Board properly conveyed to CMS that there had been a finding of guilt, but that there would be no final disposition until the sentencing in March. Although Gnutek argues that the Board knew that there was a good chance that Gnutek would never be sentenced and that there would never be a conviction, the only information before the Board at the time was that the court had expressed a willingness to entertain a motion to vacate if certain conditions were met. Gnutek does not discuss when those conditions were met and whether the Board was kept informed, nor does Gnutek argue that the court had ordered the vacatur of the conviction which order it stayed pending the completion of those conditions. Gnutek alleges only that the court expressed a willingness to entertain a motion for vacatur upon fulfillment of the conditions. Therefore, the Board's communication did not misstate the status of the pending criminal case to CMS. Moreover, the Rules of Conduct in the Employee Handbook (the "Handbook") make clear that the concept of a "conviction" for purposes of employee discipline is not the same as the determination of a final judgment of conviction under Illinois law. In explaining the requirement to report convictions to the Deputy Administrator, the Handbook defines "conviction" to include "all misdemeanors and felonies committed as an adult for which you plead guilty, are found guilty, are convicted, or agreed to

an alternative sentencing program or pretrial diversion program which required an admission, stipulation or finding of guilt, including court supervision and/or probation." The definition of a conviction in the reporting requirement therefore is more expansive than including only misdemeanors and felonies for which one is convicted. Instead, it incorporates any such charges for which there is a finding of guilt, including offenses subject to an alternative sentencing program or pretrial diversion program. In light of that broad definition, the finding of guilt by the court could constitute a conviction for disciplinary purposes even if the court allowed the alternative of vacatur upon the satisfaction of anger management counseling and payment of a fine. In light of the broad definition of "conviction," the Board's submission of that finding of guilt to support discipline for a "conviction" cannot be considered such a mischaracterization of the facts as to support an inference that the charge was a pretext to retaliate for the prior litigation.

Second, the disciplinary charge included "conduct unbecoming an employee," and Gnutek makes no argument at all that the conduct unbecoming charge would depend upon whether a conviction was sought or a final judgment of conviction obtained. The undisputed evidence is that the judge made a finding of guilt as to the battery charge, and the court then gave Gnutek 90 days to attend counseling and pay the victim's medical bills, after which time the court vacated the conviction. That opportunity to vacate the conviction does not negate the finding by the court that Gnutek was incredible in his testimony of the events of that day and that he was guilty of the offense conduct, and it is that conduct that formed the basis of the termination. Gnutek does not dispute that the defendants saw the police report and the transcript of the bench

trial prior to terminating him, and thus that the defendants were aware of the nature of the charges and the credibility findings. And as the district court noted, in the summary judgment proceedings, Gnutek did not contest that he was involved in a violent altercation with a member of the public, resulting in an injury to the other driver, and that he was arrested and charged with battery. Furthermore, the district court noted that Gnutek failed to support, with any citation to the record, his claim that he had a different version of events and presented no additional facts contesting the court's finding of guilt. Gnutek never disputes that the conduct of battery, by a person in a law enforcement position, would fall within the definition of conduct unbecoming an employee, nor does he argue that the defendants did not believe that the conduct fell within that definition. Because the charge of conduct unbecoming an employee does not depend on the status of his conviction at all, his failure to contest that basis for the termination alone supports the grant of summary judgment.

Similarly, Gnutek's claim that he was improperly placed on administrative leave rather than suspension pending judicial determination fails to address the charge of conduct unbecoming an employee. He argues that suspension pending judicial determination is the proper leave status in a case in which criminal charges are pending, and that such a leave status provides an automatic right of reinstatement if the criminal matter concludes without a conviction. Gnutek argues, without much explanation, that a jury could conclude that the deviation from the proper leave status was intended as a means of harming Gnutek's prospects of returning to work and could infer a retaliatory intent in his termination as a result. That argument addresses the conviction charge, but not the conduct unbecoming an employee charge, which does not

include as an element any pending criminal charge. In fact, Gnutek does not address whether administrative leave is proper rather than suspension pending judicial determination where one of the charges does not depend upon any judicial proceeding. Accordingly, it provides an insufficient basis for a jury to infer pretext.

Gnutek also briefly argues that two other persons who committed misconduct relevant to their positions were treated less harshly. The district court refused to consider those alleged comparators because the argument was supported with factual assertions that did not appear in the Local Rule 56.1 statements. If challenged, such a determination of a Rule 56.1 violation would be reviewed only for an abuse of discretion. *Igasaki v. Ill. Dept. of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). But Gnutek does not even address that holding in his brief, and similarly did not respond to the argument in the defendant's brief on appeal pointing out his failure to challenge it and arguing that he therefore forfeited any argument that the ruling was wrong. Because he failed to challenge the district court's holding, the comparators are not before this court on appeal. *Hackett v. City of South Bend*, 956 F.3d 504, 510 (7th Cir. 2020).

Other than the bare fact that he had engaged in prior litigation against the defendants, Gnutek has presented no evidence from which a trier of fact could conclude that the termination in this case was retaliatory. Gnutek has failed to present evidence sufficient to allow a jury to find that his protected conduct was either a necessary or even a contributing factor in his termination. Therefore, the district court properly granted summary judgment for the defendants.

The decision of the district court is AFFIRMED.